57 F.3d 1080
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Gabriel LOPEZ-ORTIZ, Petitioner-Appellant,
v.
Janet RENO, U.S. Attorney General; Gerald Shur, Director,
Office of Enforcement Operations; United States
Department of Justice, Respondents-Appellees.
 No. 94-1460.
 United States Court of Appeals, Tenth Circuit.
 June 19, 1995.
 
 Before ANDERSON, BALDOCK and BRORBY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 BRORBY
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Petitioner Gabriel Lopez-Ortiz appeals the district court's order denying his petition for a writ of mandamus. Our jurisdiction arises under 28 U.S.C. 1291, and we affirm.
 
 
 3
 The undisputed facts are as follows. Mr. Ortiz was indicted in federal court for violations of the federal drug laws. He ultimately entered into a plea agreement and pled guilty to a conspiracy charge. He was sentenced to, and is currently serving, a 121-month term of incarceration in a federal penitentiary. He then filed this action seeking a writ of mandamus requiring the Attorney General to transfer him to a Mexican prison pursuant to the Treaty on the Execution of Penal Sentences, Nov. 25, 1976, U.S.-Mexico, T.I.A.S. No. 8178 ("Treaty"), and its implementing legislation, 18 U.S.C. 4100 et seq. ("Act"). The matter was referred to a magistrate judge who recommended the petition be denied.
 
 
 4
 The magistrate judge relied on the Department of Justice's determination that Mr. Ortiz was not an appropriate candidate for transfer because he had been convicted of a drug trafficking crime and the crime of escape, and because he had resided for sixteen years in the United States. Relying on Scalise v. Thornburgh, 891 F.2d 640 (7th Cir.1989), cert. denied, 494 U.S. 1083 (1990), and Bagguley v. Bush, 953 F.2d 660 (D.C.Cir.1991), cert. denied, 503 U.S. 995 (1991) (per curiam), both of which involved a similar international convention designed to return prisoners to their home countries to serve prison sentences,[2] the magistrate judge recommended the petition be denied for four reasons: (1) the terms of the Treaty did not require the Attorney General to transfer him to Mexico; (2) the Attorney General was not required to promulgate rules and standards regarding transfer under the Treaty; (3) the Treaty did not confer a liberty interest in a transfer; and (4) the Attorney General's refusal to order his transfer was not subject to judicial review under the Administrative Procedures Act. The district court adopted this recommendation over Mr. Ortiz's objections, and denied the petition. On appeal, Mr. Ortiz challenges only the first two rulings. Finding no error, we affirm.
 
 
 5
 With respect to the first issue, we begin by reiterating the principle that mandamus is an "extraordinary remedy," available only when, inter alia, no other adequate remedy exists. See Western Shoshone Business Council ex rel. Western Shoshone Tribe v. Babbitt, 1 F.3d 1052, 1059 (10th Cir.1993). Furthermore, mandamus "will issue only to compel the performance of a clear nondiscretionary duty.' " Pittston Coal Group v. Sebben, 488 U.S. 105, 121 (1988) (quoting Heckler v. Ringler, 466 U.S. 602, 616 (1984)). The importance of the term "nondiscretionary" cannot be overstated; although the federal judiciary possesses the power to issue mandamus against a member of the Executive branch, this power is necessarily limited--because of concerns over judicial encroachment into the Executive domain--to situations where the act to be ordered is purely ministerial and does not require the exercise of Executive discretion. See Marbury v. Madison, 5 U.S. (1 Cranch) 137, 170 (1803); see also United States ex rel. Dunlap v. Black, 128 U.S. 40, 44 (1888). Any other result would have the judiciary impermissibly infringe on Executive prerogative.
 
 
 6
 Article IV of the Treaty delineates the procedures for initiating an international transfer of a prisoner. Section (2) specifically states "[i]f the Authority[3 of the Transferring State finds the transfer of an offender appropriate, and if the offender gives his express consent for his transfer, said Authority shall transmit a request for transfer, through diplomatic channels, to the Authority of the Receiving State." Thus, by its own terms, the first clause of this section sets forth a necessary precondition to a prisoner transfer under this treaty: whether the United States, as the transferring state, finds a transfer is appropriate based on the criteria set forth in section (4) of Article IV of the Treaty. Those criteria include:
 
 
 7
 all factors bearing upon the probability that the transfer will contribute to the social rehabilitation of the offender, including the nature and severity of his offense and his previous criminal record, if any, his medical condition, the strength of his connections by residence, presence in the territory, family relations and otherwise to the social life of the Transferring State and the Receiving State.
 
 
 8
 If the Transferring State does not find a transfer is appropriate, then the mandatory language in the third clause requiring the Transferring State to transmit this request to the Receiving State is not applicable.
 
 
 9
 Contrary to Mr. Ortiz's assertions, we believe these sections of the Treaty vest the Executive branch with discretion to decide whether a transfer is appropriate. By its own terms, the first clause of section 2 is discretionary ("[I]f the Transferring State ..."). Moreover, the particular context in which this decision is made cannot be ignored as such determinations have international and political concerns. The decision requires the Executive branch to weigh various competing interests and make a determination as to the propriety of such a transfer. In this case, the Attorney General, relying on the criteria enumerated in Article IV, section 4 of the Treaty, exercised its discretion and concluded Mr. Ortiz should not be considered for a transfer under the Treaty because his prior criminal record and his ties to this country outweighed the other considerations. We simply may not override this Executive decision under the guise of mandamus review.[4]
 
 
 10
 Finally, with respect to the issue of whether the Attorney General had a duty to promulgate regulations governing transfers under 4102(4) of the Act,[5] we agree with the reasoning and analysis of the Seventh Circuit in Scalise and the District of Columbia Circuit in Bagguley on this issue. After carefully analyzing this precise question, those courts concluded 4102(4) is merely a grant of regulatory authority to the Attorney General, and not a mandatory obligation to do so. See Bagguley, 953 F.2d at 662-63 (following Scalise, 891 F.2d at 644-47). While it is true these cases involved a substantive issue of transfer under the Convention, as opposed to the Treaty, the issue in both cases, as in this case, required an interpretation of 4102(4). Therefore, on the authority of Scalise and Bagguley, we reject this claim.
 
 
 11
 For the foregoing reasons, we AFFIRM the district court's order denying Mr. Ortiz's petition for a writ of mandamus.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 See The Convention on the Transfer of Sentenced Persons, Mar. 21, 1983, T.I.A.S. No. 10,824 ("Convention")
 
 
 [3]
 Pursuant to Article III of the Treaty, the Act provides the Attorney General of the United States is "the Authority" empowered to act on behalf of the United States. See 18 U.S.C. 4102. The Act further provides the Attorney General may delegate this authority to "officers of the Department of Justice." Id. 4102(11)
 
 
 [4]
 This is not a case where, for example, the Attorney General concluded Mr. Ortiz was a proper candidate for transfer but refused to deliver the appropriate paperwork to him. Under those circumstances, it is at least arguable that this refusal might properly be challenged in a mandamus action as ministerial rather than discretionary. Cf. Marbury, 5 U.S. at 171-72 (holding that the Secretary of State's failure to deliver a judicial commission authorized by the President was a ministerial act subject to mandamus). But the very issue Mr. Ortiz seeks to challenge is the threshold discretionary decision of whether he is a proper candidate for transfer under the Treaty
 
 
 [5]
 18 U.S.C. 4102(4) provides "[t]he Attorney General is authorized--... to make regulations for the proper implementation of such treaties in accordance with this chapter."